UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANNEN THOMPSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-133

Bowman, M.J.

**MEMORANDUM OF OPINION
AND DECISION**

Plaintiff Shannen Thompson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both which the Defendant disputes. The parties have consented to disposition by the Magistrate Judge. (Doc. 6). For the reasons explained below, ALJ's finding of non-disability is AFFIRMED because it is supported by substantial evidence in the administrative record.

**I.    Summary of Administrative Record**

In April 2016, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of October 25, 2014, due to mental and physical impairments. (Tr. 186-194). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On November 14, 2018, ALJ Donald D'Amato held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 3174-3197). At that time, Plaintiff

stipulated to a closed period of disability from October 26, 2014 through December 31, 2016. (Tr. 3177).

In a written decision dated January 16, 2019, the ALJ's discussion of the evidence focused on this closed period and concluded that Plaintiff was not disabled from her alleged onset date of October 26, 2014, through the date of the ALJ's decision (Tr. 11-25). Plaintiff now seeks judicial review of the denial of her application.

Plaintiff was 27 years old on her alleged onset date. (Tr. 24). She completed high school and has past relevant work as a salesclerk and a nurse's aid. She alleges disability based primarily on her limitations related to carpal tunnel syndrome.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with history of cerebrovascular accident; gastroesophageal reflux disease with diabetic gastroparesis and obesity, status-post laparoscopic splenectomy and sleeve gastrectomy; obstructive sleep apnea; migraine headaches; carpal tunnel syndrome, status-post bilateral release and right-sided revision; ulnar neuropathy, status post-cubital tunnel release with anterior transposition; major depressive disorder; and generalized anxiety disorder. (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> She is limited to unskilled work with 1, 2, or 3 step instructions in a non-fast-rate production environment, defined as involving no conveyor belt or assembly line work; she cannot function as a member of a discrete team and contact with co-workers and supervisors is largely superficial; she can have no direct interactive contact with the public; she requires a low stress environment, defined as having only occasional changes in the work setting;

2

she can only occasionally use computers as part of her job responsibilities; she can lift and/or carry 5 pounds frequently and 10 pounds occasionally; she can stand/or walk with normal breaks for about 2 hours in an 8-hour work day, but she can do so for only 15 minutes at 1 time; she can sit with normal breaks for about 6 hours in an 8-hour workday, but she can do so for only 15 minutes at 1 time; she can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-hour workday; she can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than 2/3 of an 8-hour workday, but her job responsibilities should not include repetitive, forceful gripping; she needs to avoid hazards in the workplace such as moving machinery and unprotected heights; she cannot be frequently exposed to flashing lights or have concentrated exposure to loud noises; her job responsibilities cannot include the use of hand-held vibrating or power tools; she needs to be restricted to a relatively clean work environment with stable temperatures, stable humidity, and good ventilation; she can occasionally balance, stoop, crouch, kneel, crawl, and climb stairs with handrails, but she needs to avoid climbing ladders, scaffolds, and ropes; and she requires work that, in additional to any regularly scheduled breaks, allows her to be off-task 10 percent per 8-hour workday due to symptoms from her impairments and/or the ancillary effects of treatment for such impairments.

(Tr. 19-20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff was unable to perform her past relevant work, Plaintiff could perform other work in the national economy including such jobs as finisher, stone setter and addressing clerk. (Tr. 24). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations, and is not entitled to DIB *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by 1) improperly evaluating Plaintiff's residual functional capacity (RFC); and 2) improperly determining that Plaintiff could perform "other work" that existed in significant numbers in the national economy. Upon close analysis, I

conclude that the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .

4

> . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

*A. RFC Assessment*

Plaintiff's first assignment of error challenges the ALJ's RFC Assessment. Specifically, Plaintiff argues that the ALJ failed to adequately account for the time period prior to 2017 when Thompson was undergoing and recovering from surgeries and other conditions and impairments—including carpal tunnel release and ulnar nerve release surgery, spleen removal, and a sleeve put on her stomach for her gastroparesis.

The RFC is the most Plaintiff can still do despite the physical and mental limitations resulting from her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6th Cir. 2009) (citing the regulations). It is a determination based on all of the relevant medical and other evidence and is ultimately an administrative determination reserved to the Commissioner. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff has the burden to provide evidence to establish her RFC. See 20 C.F.R. § 404.1545(a)(3); SSR 96-8p. While the ALJ must determine Plaintiff's RFC based upon all relevant evidence, "the ALJ is not required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance." *Martise v. Astrue*, No. 4:08-CV-1380, 2010 WL 889826, at *22 (E.D. Mo. Mar. 8, 2010), aff'd, 641 F.3d 909 (8th Cir. 2011).

Here, as noted above, the ALJ determined that the ALJ limited her to sedentary work, and indicated that Plaintiff could lift and carry only 5 pounds frequently and 10 pounds occasionally, and could perform pushing and pulling motions with the upper extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-

6

hour workday (Tr. 19-20). Next, the ALJ found that she could perform bilateral handling and reaching for not more than 2/3 of an 8-hour day, but he continued on to clarify that "her job responsibilities should not include repetitive forceful gripping." (Tr. 20). He also specified that she could only occasionally use computers as part of her job responsibilities, and that her job responsibilities could not include the use of hand-held vibrating or power tools. (Tr. 20). He also precluded her from climbing ladders, ropes, or scaffolds. (Tr. 20)

With respect to her carpal tunnel syndrome, the ALJ noted that Plaintiff reported improvement after her surgeries, and that she continued to work part-time and care for her three children during her alleged period of disability. (Tr. 21-23).

Plaintiff contends that the ALJ's RFC failed to consider substantial evidence relating to the limitations relating to both gross and fine manipulation with handling and reaching for up to two-thirds of an eight-hour workday. In this regard, Plaintiff argues that the ALJ failed to consider substantial evidence from UC Health Orthopedics and Sports Medicine in 2015 and 2016. Such evidence included office notes dated September 1, 2015 that state that while therapy was helping Thompson "a little bit," she was having a lot of pain and was actually not tolerating the therapy well. (Tr. 1990). She was experiencing numbness in her fingers and "locking" thumbs. Micah Sinclair, M.D. revealed positive Tinel's at the elbow bilaterally and positive elbow flexion test. Id.

Plaintiff further asserts that the ALJ improperly interpreted objective and clinical medical findings—including EMGs and clinical objective findings by the specialists at UC Health Orthopedics and Sports Medicine." (Doc. 12 at. 10).

7

Notably, "the regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled." Id. at 726-27 (citations omitted). Social Security Ruling 16-3p expands on the ALJ's consideration of objective medical evidence in evaluating Plaintiff's subjective complaints and assessing the RFC, and explains that "…objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities…" SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Here, the ALJ properly evaluated the objective evidence.

Moreover, as noted by the Commissioner, the ALJ explicitly referenced Plaintiff's testimony that she was unable to work because of her carpal tunnel syndrome, but also noted that "her ability to lift 25 pound boxes improved after her carpal tunnel and ulnar neuropathy surgeries." (Tr. 21, 3183). The ALJ asked Plaintiff "what treatment do you feel enabled you to return to work?" and Plaintiff testified that it was "the different surgeries that [she] had," including the ulnar surgery and the carpal tunnel surgery in addition to several other surgeries(Tr. 3184-3185).

Moreover, although Plaintiff testified that she could lift 25 pounds following her surgeries in October 2014 and November 2015, the ALJ limited her to lifting and carrying no more than 5 pounds frequently and 10 pounds occasionally, and no work that involved gripping, in addition to the other exertional, manipulative, and environmental restrictions outlined above. (Tr. 19-20). Accordingly, the ALJ's lifting and carrying restriction was consistent with Plaintiff's testimony that even prior to her surgeries, she could lift lighter weights, "like the wigs, and some of the putting away of some of the extensions that were already taken out of the box, by putting those on the shelf." (Tr. 3183).

Furthermore, as detailed by the Commissioner, the ALJ "was not required to explain every piece of evidence in the record," because "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Loral Defense Sys.–Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (quoted by *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018)). The Sixth Circuit Court of Appeals has recognized that it is a wasteful and duplicative exercise for the ALJ to summarize all of the evidence of record in his decision, and it has declined to require the ALJ to do so; instead, the court considers whether the ALJ's factual findings show he implicitly considered the record as a whole. *See Rudd v. Comm'r of Social Sec., 531* F. App'x 719, 730 (6th Cir. 2013).

Here, the ALJ's RFC assessment was based upon the record as a whole and properly considered Plaintiff's subjective reports, the diagnostic evidence, the findings on examination, and the doctor's recommendations for surgeries. Accordingly, the ALJ's findings are supported by substantial evidence and should not be disturbed.

*B. Step-Five Assessment*

Plaintiff argues that the ALJ did not include sufficient restrictions in her RFC related to her ability to handle and reach and that as a result, the hypothetical question to the vocational expert was insufficient and the vocational expert's testimony could not have constituted substantial evidence to support the ALJ's decision. Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d

1230, 1235 (6th Cir. 1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that she had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not support these alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found. Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and this case is **CLOSED.**

**So Ordered.**

*Stephanie K. Bowman*
Stephanie K. Bowman
U.S. Magistrate Judge